IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BERNARD JERRY,             :
      Plaintiff       :
   v.                      : Case No. 3:08-cv-125-KRG-KAP
JEFFREY BEARD, et al.,     :
      Defendants      :

Report and Recommendation

Recommendation

      Pending are cross motions for summary judgment, plaintiff's at docket no. 80, and defendants' at docket no. 83. Defendants' motion should be granted and this matter ended. There are other pending motions that are either meritless, like plaintiff's Rule 50 and Rule 60 motions, docket no. 75 and docket no. 76, or superfluous, like defendants' motion to dismiss for lack of prosecution, docket no. 78[1]. As a housekeeping matter, defendants' motion for extension of time, docket no. 82, is granted.

Report

      Plaintiff Jerry is in his mid-60s, and has been in the state prison system for the majority of his life after his conviction for murder of the assistant manager of an Aliquippa grocery store in Beaver County Pennsylvania during a robbery attempt on February 13, 1977. See Robinson v. Sobina, Case No.

---

1. The motion to dismiss for failure to prosecute really is a motion to dismiss as a discovery sanction under Fed.R.Civ.P. 37. After about an hour into his deposition, plaintiff decided he had had enough and began answering every question asked of him with "asked and answered," thus shutting down the deposition.

3:96-cv-101-DBS-KAP (W.D.Pa. January 29, 1997), <u>certificate of appealability</u> <u>denied</u> No. 97-3113 (3d Cir. May 5, 1997). Jerry has been no stranger to the litigation process while in prison, having filed at least 17 complaints or habeas petitions accessible on the docket in this court alone, in addition to the complaint now before the court.

This complaint was originally filed in May 2008, and alleged two claims arising out of events that began on February 8, 2008 in the library at S.C.I. Cresson. On that date, the Pennsylvania Department of Corrections employee in charge of the prison library, defendant Matthew Kessler, allegedly took a children's book entitled "Pinky Pigg" that plaintiff alleges he had written and was seeking to copy on the library copier in order to apply for a copyright. (Copyright protection exists from the moment a creative work is fixed in a tangible medium; the purpose of registering a copyright with the Copyright Office is to allow the author of a work created in the United States to file an infringement suit.) Kessler believed that plaintiff was using the copier to attempt to further a well-known practice of inmates using fraudulent UCC filings as a means to harass public officials and other non-inmates. Kessler confiscated the materials plaintiff had at the copier and wrote several misconduct citations directed to plaintiff, at misconduct no. A3373537.

The misconducts proceeded to hearing before the Pennsylvania Department of Corrections' administrative system. Plaintiff was aware that Kessler believed that plaintiff was engaged in a fraudulent UCC scheme because in his defense he denied that he was involved in any such conduct. On February 21, 2008, a hearing examiner, defendant Robert Reed, found plaintiff guilty of some of the misconducts (possession of contraband and unauthorized use of the mail or telephone) and not guilty of others, and imposed the sanction of a "reprimand," and a "warning." Reed also wrote the cryptic words "Revoke Contraband" on his written disposition. Plaintiff appealed through the Pennsylvania Department of Corrections administrative appeals system, and his appeals were rejected on the merits by the Program Review Committee (defendants Jamey Luther, Jamie Boyles, and Morris Houser) on March 4, 2008.

Kessler issued plaintiff a confiscation slip which described the items confiscated as

> One AuthorHouse Folder
> - Copies and original
> - AuthorHouse Author Services Agreement

On the right side of the confiscation slip is the handwritten notation "Destroyed 7/2/08" followed by an illegible signature or initials. Defendant Lieutenant Wilt claims he destroyed an AuthorHouse folder and services agreement (but not a work called

"Pinky Pigg") on that day. See docket no. 58 at 42. I presume that is Wilt's writing on the confiscation slip.

Plaintiff alleged that the misconduct citation issued by Kessler was "retaliatory" because plaintiff had successfully appealed from a citation that Kessler had issued to plaintiff a few months earlier. See docket no. 58 at 33. Plaintiff alleges that he filed a grievance stating this and also submitted several letters or grievances requesting the return of his children's book, beginning with a letter to Wilt sent on February 10, 2008. Plaintiff appealed the denial of his grievances seeking the return of his alleged children's book. Before that appeal process was finished in April 2008, with the statement by chief grievance officer Cindy Watson that "your materials were returned to you," docket no. 58 at 31, plaintiff filed a second grievance or request to Wilt requesting the return of his book. For his part, Wilt has maintained that what he received and destroyed was not a children's book.

The relief plaintiff sought in his complaint was: 1) to indict all the defendants; 2) to prevent the Pennsylvania Department of Corrections from "confiscating literary material" of plaintiff and other inmates; 3) to revise Pennsylvania Department of Corrections procedures "to meet federal standards;" and 4) compensatory and punitive damages.

4

The plaintiff's complaint was dismissed at the end of 2008 under the Prison Litigation Reform Act's "three strikes" rule, 28 U.S.C.§ 1915(g), docket no. 30, then reinstated when Jerry paid the filing fee, then dismissed again in February 2010 for failure to state a federal claim, without prejudice to plaintiff pursuing any claim for the destruction of his property in state court. docket no. 42, docket no. 46. Plaintiff appealed.

A little more than a year later, plaintiff's complaint was reinstated in part after a nonprecedential *per curiam* opinion (NPO) held that plaintiff had stated two claims, one of which was different from the destruction of property claim I had said must be litigated in state court. <u>Jerry-El v. Beard</u>, 419 Fed.Appx. 260 (3d Cir.2011). The author of the NPO held that if "[Jerry's] story was never returned – and perhaps was destroyed – he may be able to assert a claim under the Copyright Act against the DOC [sic] for interfering with his ability to protect his copyright through registration with the Library of Congress," <u>Id.</u> at 263. The NPO also held that plaintiff had stated a *prima facie* claim that against defendant Kessler that Kessler confiscated plaintiff's materials to retaliate against Jerry for filing a previous grievance, and that defendants had to assert the validity of the finding of misconduct as an affirmative defense, docket no. 60 at 7.

I ordered the parties to conduct discovery and file cross motions for summary judgment on these two claims, presenting whatever evidence the parties had that the Kessler's issuance of a misconduct was or was not sustained on appeal, any evidence that any defendant acted with intent to prevent plaintiff from registering his work under the Copyright Act, and any evidence that any damages were caused by any action of any defendant. docket no. 62. The parties responded as noted above.

I address first the familiar elements of a retaliation claim. After <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir.2003), the three elements of a retaliation claim are: (1) that the plaintiff took some action itself protected by the constitution; (2) that the defendant took adverse action against the plaintiff sufficient to deter a person of ordinary firmness from persisting in his conduct; and (3) that there was a causal connection between the plaintiff's protected conduct and the adverse action. If a plaintiff produces evidence sufficient to establish a prima facie case, a defendant may still prove the affirmative defense that she "would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." <u>Rauser v. Horn</u>, 241 F.3d 330, 334 (3d Cir.2001).

The misconduct that plaintiff asserts was retaliatory was in fact upheld throughout the grievance process and has never been invalidated in court, for example in a petition for a writ of

habeas corpus. Plaintiff gets fuzzy in his arguments, sometimes implying that the misconduct was the retaliation, sometimes implying that the confiscation was the retaliation, but because the confiscation was ancillary to the issuance of the misconduct and the misconduct cannot be collaterally attacked in an action for damages, plaintiff has no claim either way. Given the uncontested state of the record, Kessler's allegedly retaliatory conduct consists of issuing a misconduct that was not overturned in the administrative grievance system provided by the Pennsylvania Department of Corrections or in court. Plaintiff cannot bring a collateral attack on the person issuing a valid misconduct (or in Reed's case, the person deliberating the evidence of misconduct) regardless of the alleged motive of the defendants. Carter v. McGrady, 292 F.3d 152, 159 (3d Cir.2002). In Carter, an inmate alleged that his disciplinary sanction was imposed in retaliation for his work as a jailhouse lawyer, but the appellate court concluded that, even assuming that an inmate had a constitutionally protected interest to assist other prisoners with legal matters, and that prison officials' disciplinary action against Carter was "motivated by hostility to this protected activity," Carter could not prevail in a retaliation claim because of his guilt of the charge underlying the disciplinary sanction. Carter v. McGrady's rationale has been consistently applied in this circuit to require a **showing** that an allegedly retaliatory misconduct was factually

unsupported. Romansky v. Stickman, 147 Fed. Appx. 310, 312 (3d Cir.2005); Alexander v. Fritch, 396 Fed.Appx. 867, 873-74 (3d Cir.2010); Fortune v. Hamberger, 379 Fed.Appx. 116, 121 (3d Cir.2010).

As a second point, one that is not addressed by either party but one which I have a duty to address sua sponte "at any time" under 28 U.S.C.§ 1915 and 28 U.S.C.§ 1915A, the sanction imposed on plaintiff - warning and a reprimand unaccompanied by any time in the RHU - is insufficient "adverse action" to satisfy the second element of a retaliation claim. Plaintiff clearly was not and is not in the least deterred or chilled in his filing of grievances or pursuit of litigation by the minimal sanction actually imposed by Reed or threatened by Kessler. Nor would any person "of ordinary firmness" be so deterred.

As far as the Copyright Act claim suggested by the author of the NPO, that plaintiff "may" have been able to state a claim that he was injured by a defendant interfering with his ability to protect his creation under the Copyright Act, the author of the NPO did not and could not overrule Hudson v. Palmer, 468 U.S. 517 (1984), or allow inmates to conduct an end-run around Hudson v. Palmer (and for that matter Daniels v. Williams, 474 U.S.327 (1986)) simply by pleading that the property destroyed by a guard was a literary work and they intended someday to register a copyright on it. It is likely that the law clerk who drafted the

NPO wanted to prove his or her cleverness by hypothesizing an exception to the statement in my Report and Recommendation that "the only function copyright serves is to enable an author to commercially exploit his creations. In other words, to carry on a business." Mercifully, someone at the Court of Appeals seems to have subsequently recognized the potential for mischief the creation of an "interference with registration" cause of action can cause. Tormasi v. Hayman, 2011 WL 3851523 (3d Cir.2011)(rejecting an "interference with registering my invention with the Patent Office" claim by an inmate under the prison's inmate business rule).

      Plaintiff claims and defendants concede for purposes of this motion that a jury could find that what Kessler confiscated included a book entitled "Pinky Pigg." What "Pinky Pigg" is or was remains an open question. But regardless of the correctness of Watson's belief that Pinky Pigg was returned or Wilt's belief that "Pinky Pigg" was not part of the paper he destroyed there can be no damages for a "claim under the Copyright Act [] for interfering with [the] ability to protect [a] copyright through registration with the Library of Congress" in the absence of infringement. Under the Copyright Act, a plaintiff can recover actual damages or statutory damages, 17 U.S.C.§ 504(b),(c), but both require proof of infringement. For actual damages, one measure of an author's loss is the diminution in the profits to the author caused by the

9

pirating of the copyrighted work. Another way to measure damages from infringement is the value of the use of the copyrighted work to the infringer, see e.g. TIMPCO, LLC v. Implementation Services, LLC, 2010 WL 3925117, *6 (S.D.Ind. 2010). Even if every named defendant conspired to destroy plaintiff's work to prevent plaintiff from registering a copyright, there is no evidence that any defendant (or anyone else) ever exploited (or at any time in the future can exploit) plaintiff's alleged work and thereby infringed on its copyright. Plaintiff himself based his entire complaint on the factual assertion not that his work was pirated or might be pirated, but that it was destroyed. The value of a Copyright Act claim is zero.

It is important to stress the inequity of subjecting the defendants to continued expense and distraction from litigation which is obviously harassment. Although plaintiff testified in his deposition that he had been working on the manuscript for "Pinky Pigg" for more than five years, that the manuscript was approximately a 40-page (single-spaced) 10,000-word effort, and that there was an accompanying stage play, a second version of the children's book, and a coloring book and song, plaintiff could not describe any efforts to register the copyright in those works or any other work. None of those other works are extant either, having been stolen by persons unknown at times unknown when plaintiff was in the RHU. Plaintiff could not recall if he had

ever sent out a preliminary draft to anyone, despite re-writing 25 earlier versions of "Pinky Pigg," and plaintiff could barely describe the plot of this alleged 40 pages (single-spaced) in more than two sentences: even basic matters as whether the character "Jeb" is a "bull" or a "boy" vary depending on where plaintiff is describing them. Plaintiff, despite this, estimated the commercial worth of his creation as equivalent to the Harry Potter series. And then, as noted above, plaintiff completely shut down any attempt by defendants to defend themselves from plaintiff's claim by inquiring into these matters in plaintiff's deposition.

Since the evidence is that "Pinky Pigg," whatever it was when it existed, was destroyed in July 2008, there is no way any third party can possibly infringe on plaintiff's property rights by wrongfully exploiting his creative product. Since plaintiff has neither supplied or pointed to the existence of any competent evidence of the value of "Pinky Pigg," much less of the portion of that value lost by infringement or potential infringement, judgment should be entered for the defendants on the Copyright Act claim for lack of evidence that plaintiff suffered any loss.  On evidence this insubstantial there should be no further waste of scarce resources just to provide recreational litigation opportunities to an inmate.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: _December 30, 2011_    _/s/ Keith A. Pesto_
Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

　　Bernard Jerry AP-3307
　　S.C.I. Cresson
　　P.O. Box A
　　Cresson, PA 16699-0001